[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14655
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A97-194-379,
A97-194-380

HERNAN VALENCIA-ESPINOSA,
GLORIA LUCIA MONTES DE VALENCIA,
ANGELICA MARIA VALENCIA-MONTES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 29, 2009)

Before BLACK, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Hernan Valencia Espinosa and his wife, Gloria Lucia Montes de Valencia, and daughter, Angelica Maria Valencia-Montes (collectively, "the Petitioners"), natives and citizens of Colombia, petition for review of the order by the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") order of removal and denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).  For the reasons set forth below, we deny the petition.

## I. Background

With his application for asylum, withholding of removal, and relief under the CAT, Hernan submitted, inter alia: (1) a letter from Mariano Paz Ospino, a Conservative Party member of the Chamber of Representatives, indicating that Hernan had worked on his campaign; (2) an undated letter from the FARC, asking Hernan and Gloria to join its struggle by making a payment and indicating that it "[knew] about [Hernan's] great spirit of collaboration with the poor people of [Colombia] because of [his] position in the chamber of representatives [of Congress]"; (3) an undated letter from the FARC, indicating that, because he had not complied with its request for payment, his family had been declared military targets, such that he had 15 days to pay or else the FARC "[would] have to defend

2

[its] interests in [its] own way and [Hernan would] have to accept the consequences"; (4) a police report, dated February 27, 2003, indicating that Hernan had complained that he received two threatening letters from the FARC, in one of which the FARC indicated that Hernan's family had been declared military targets because he had not complied with the FARC's requests for economic requests, and intimidating calls from the FARC; and (5) a notice indicating that Hernan had reported to the Human Rights Office that the FARC had threatened the lives of Gloria, Angelica, and a second daughter, Carolina.

At a hearing, Hernan testified as follows. He worked for Ospino, arranging political meetings and fairs and sporting events designed to get people interested in Ospino, and had been persecuted by the FARC because of this work. Specifically, (1) on July 22, 2002, he received a letter from the FARC demanding money; (2) on October 2, 2002, he received a call from a member of the FARC, reminding Hernan of the contents of the previous letter and demanding that Hernan cease his political activity; (3) on January 6, 2003, he received a call from a member of the FARC, inviting him to a meeting in the mountains; (4) on February 25, 2003, he received a letter from the FARC, informing him that the family had been declared military targets; and (4) in early March 2003, he received a call from a member of the FARC, who said, "[Y]ou son of a bitch, you think you can make fun of us. [Since] neither the letters nor the [calls] have been able to make you see the light

3

and do what we want you to do, I'm going to kill you and all your family." Because of the persecution, the Petitioners decided to flee.

The IJ denied relief, reasoning that (1) Hernan's claims were incredible, as the letter from Ospino, the letters from the FARC, and the police report showed that the FARC was interested in money only; (2) the Petitioners had not demonstrated the requisite nexus between the FARC's acts and a protected ground; (3) the FARC's acts did not rise to the level of persecution; (4) because the Petitioners could not establish asylum eligibility, they also could not establish withholding-of-removal eligibility; and (5) the Petitioners had presented no evidence establishing CAT eligibility. The BIA affirmed, echoing the IJ's reasoning and additionally reasoning that the Petitioners had not established eligibility for relief based on a pattern and practice of the FARC persecuting similarly situated individuals, because they had not demonstrated the requisite nexus.

## II. Analysis

When the BIA affirms the IJ's decision, but issues a separate opinion, as here, we review the BIA's opinion "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). When reviewing the BIA's opinion, we review legal determinations de novo and factual determinations under the "substantial evidence

test." See Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (regarding denials of relief); Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006) (regarding adverse credibility determination). Under this test, which is "highly deferential," we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). In order to reverse a finding of fact, "we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

## A. Adverse Credibility Finding

As the trier of fact, the IJ "must determine credibility, and [we] may not substitute [our] judgment for that of the [IJ] with respect to credibility findings." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). The credible testimony of the applicant "may be sufficient to sustain the applicant's burden without corroboration." INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii); D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818-19 (11th Cir. 2004). "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). If the applicant offers such evidence, the IJ must consider it. Forgue, 401 F.3d at 1287. Once the IJ makes an adverse credibility determination, the burden is on the applicant to show that the determination "was not supported by specific, cogent

5

reasons." Id.

Substantial evidence supports the IJ's adverse credibility finding. See Chen, 463 F.3d at 1231. The IJ's reason was sufficiently specific, in that he referenced and discussed the specific pieces of documentary evidence that demonstrated the inconsistency and supported his finding. See Forgue, 401 F.3d at 1286. The IJ's reason also was cogent. See id. The pieces of documentary evidence that support the Petitioners' claim of persecution include a letter from the FARC asking for a donation, a letter from the FARC reminding Hernan of its request for a donation, a police report from February 2003 referencing these letters and certain calls from the FARC, and a notice from the Human Rights Office noting that Hernan had reported the death threats from the FARC. This documentary evidence demonstrates that the FARC targeted Hernan and his family because it wanted money. Although the first letter mentioned above referred to Hernan's employment with the Chamber of Representatives, it seemed to do so as a means of pointing out that Hernan was familiar with helping the poor and, thus, should donate to the FARC, rather than as a threat against his political activity. Conversely, the only evidence presented that suggests that the FARC was motivated by Hernan's political activity is Hernan's testimony that a member of the FARC called him on October 2, 2002, and told him to cease his political activity. Although this evidence of political motivation is weak when compared to

the above evidence of a solely economical motivation, especially since the police report was made after the October 2, 2002, call and yet still did not mention the FARC's alleged political motivation, the Petitioners failed to present corroborating evidence to support the testimony. See Yang, 418 F.3d at 1201. Thus, the IJ reasonably found that, because Hernan's testimony did not match the only documentary evidence offered, it was not believable. Accordingly, we deny the petition as to this issue.

### B. Asylum & Withholding of Removal

An alien who arrives in or is present in the United States may apply for, inter alia, asylum and withholding of removal. INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A), 8 C.F.R. § 208.16(c). To qualify for asylum, the alien must prove that he is a refugee. Al Najjar, 257 F.3d at 1284 (citing 8 U.S.C. § 1101(a)(42)(A)). A refugee is defined in the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish refugee status, the alien must establish, through specific, detailed facts, (1) his past persecution on account of a protected ground, or (2) his "well-founded fear" that he will be

7

persecuted in the future on account of a protected ground. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287. A well-founded fear of future persecution may be established by showing (1) past persecution that creates a rebuttable presumption of a well-founded fear of future persecution based on a protected ground, (2) a reasonable possibility of personal persecution based on a protected ground, or (3) a pattern or practice in the subject country of persecuting a group of similarly situated people, to which the petitioner belonged, on account of a protected ground. 8 C.F.R. § 208.13(b)(1), (b)(2)(i) and (iii). Regarding the nexus element of the standard, the applicant must demonstrate that one of the enumerated grounds "was or will be at least one central reason for persecuting" him. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). We specifically have held that persecution by a guerilla group for refusing to make extortion payments or pay "war taxes" is not persecution on account of a protected ground. See Rivera v. U.S. Att'y Gen., 487 F.3d 815, 821-22 (11th Cir. 2007).

To qualify for withholding of removal, the alien similarly must show that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). Because the more-likely-than-not standard that applies to withholding of removal claims is more stringent than the well-founded-fear standard that applies to asylum claims,

8

ineligibility for asylum generally precludes withholding of removal eligibility. Al Najjar, 257 F.3d at 1292-93.

Substantial evidence supports the BIA's denial of asylum and withholding of removal. See id. at 1283-84. The Petitioners failed to establish a requisite nexus between the FARC's acts and a protected ground. See INA §§ 101(a)(42)(A), 208(b)(1)(B)(i), 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). As discussed above, the only credible evidence offered demonstrates that the FARC was motivated by monetary concerns only. Efforts to extort, even when the money is intended for use by a politically focused organization, are not equivalent to a persecution on account of a protected ground. See Rivera, 487 F.3d at 821-22. Thus, the Petitioners could not establish past persecution on account of a protected ground or a well-founded fear of future persecution on account of a protected ground, either because Hernan would be singled out in the future for persecution or because the FARC has a pattern and practice of persecuting political opponents such as Hernan, as both standards require proof of a nexus. See 8 C.F.R. § 208.13(a), (b)(2)(i), (iii); see Al Najjar, 257 F.3d at 1287.[1] Therefore, the Petitioners were not eligible for asylum. Likewise, both because the Petitioners could not establish a nexus and did not merit asylum, the Petitioners were not

---

[1] Because the Petitioners could not establish the requisite nexus, we need not address whether the FARC's acts rose to the level of persecution.

9

eligible for withholding of removal.  See Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)); Al Najjar, 257 F.3d at 1292-93.  Accordingly, we deny the petition as to this issue.

## C. CAT Relief

We will not consider arguments presented before the IJ or BIA but not discussed on appeal.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1282 n.2 (11th Cir. 2005) (explaining that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned").  On appeal, the Petitioners do not argue that they are eligible for CAT relief.  Therefore, they have abandoned the issue.  See id.

**PETITION DENIED.**